```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LAURA STEPHEN,                                                   :
                                                                 :   1:17-CV-04739 (JBW)(ST)
                         Plaintiff,                              :
                                                                 :
             -against-                                           :   **FIRST AMENDED COMPLAINT**
                                                                 :
                                                                 :
THE CITY OF NEW YORK, a municipal entity,                        :   **JURY TRIAL DEMANDED**
and POLICE OFFICER KEVON HUSBAND,                                :
                                                                 :
                                                                 :
                         Defendants.                             :
-----------------------------------------------------------------X
```

Plaintiff Laura Stephen, by and through her attorneys, the Law Office of Alexander Sakin, LLC, brings this action under 42 U.S.C. § 1983 and New York State law, to redress her civil and legal rights, and alleges as follows:

1.  Ms. Stephen commences this action following the unlawful, unprovoked shooting and resulting death of her male dog Ziggy, by Defendant Police Officer Kevon Husband ("P.O. Husband") of the 81st Precinct of the City of New York Police Department ("NYPD"). At the time of the shooting, Ziggy was not charging, attacking, or otherwise threatening P.O. Husband or any other police officer, and was not even facing P.O. Husband. Rather, when he was shot, Ziggy was facing his owner, who was a few feet away, and had his side – and not his face – turned to P.O. Husband. Because Ziggy posed no imminent danger to P.O. Husband (or any other police officer or person) at the time of the shooting, P.O. Husband is liable under federal and state law.

1

2. Because the actions of P.O. Husband were the direct result of policies and practices instituted by Defendant City of New York, and because of the doctrine of *respondeat superior*, the municipality is liable as well.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the U.S. Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

4. Venue in this District is proper under 28 U.S.C. §§1343(3) and 1391(b) in that a substantial part of the events giving rise to this claim occurred in Kings County, a county within the boundaries of the Eastern District of New York.

5. Plaintiff has complied with N.Y. General Municipal Law §50-E by serving a notice of claim upon defendants. More than 30 days have elapsed since the claim was presented and the claim has not been satisfied.

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## PARTIES

7. At all relevant times, Plaintiff Laura Stephen was a resident of Kings County, New York.

8. Defendant P.O. Husband was an officer of the NYPD, and was acting within the scope of his employment at the time of the incident in question. P.O. Husband is sued individually and in his official capacity.

9. Defendant City of New York is, and was at all relevant times, a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain the NYPD, a police department which acts as its agent in the area of law enforcement, and for which it is ultimately responsible. The City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers. The City of New York was at all relevant times the employer of Defendant P.O. Husband.

## FACTS

10. Plaintiff Laura Stephen is a 53-year old fashion industry executive who lives in the Bedford-Stuyvesant neighborhood of Brooklyn.

11. In 2013, Ms. Stephen acquired her dog Ziggy, a Catahoula mix. Ziggy was more than a dog – he was a life partner to Ms. Stephen, a single woman who lives by herself in her Brooklyn apartment. Until his unprovoked killing by P.O. Husband, Ziggy was a source of daily companionship and emotional comfort to Ms. Stephen.

12. In addition, at all times, Ziggy was well known in the neighborhood as a gentle dog, with no history of aggressive, let alone violent, behavior.

13. On March 19, 2017, shortly after 7 p.m., with Ziggy on leash, Ms. Stephen entered Saratoga Square Park (the "Park"), a neighborhood park in Bedford-Stuyvesant, intending to take the dog for his evening walk. Daylight saving time had begun a week prior, on March 12, 2017, and it was still light outside, a cloudless day with the sun out, and with good visibility. Ms. Stephen walked with Ziggy on the perimeter of the Park, where they remained at all times that evening.

14. Park rules, which were posted on a sign, prohibited "[u]nleashed dogs, except in designated areas between the hours of 9 p.m. to 9 a.m. [sic] when the park is open." No signage

or other posting at the Park indicated the location or existence of any purported "designated areas."

15.     When Ms. Stephen entered the Park, it was entirely empty, with no children or dogs, and no other people, present in the vicinity of Ziggy or Ms. Stephen. Shortly after entering the Park, Ms. Stephen briefly unleashed Ziggy, who went off about 12 to 15 feet away to urinate in some bushes.

16.     At this point, while Ziggy was in the bushes, Ms. Stephen was addressed by Officer Brenace John ("P.O. John"), a uniformed police officer, who was walking with her partner, later identified as Defendant P.O. Husband, some ten feet behind Ms. Stephen. P.O. John ordered the dog leashed, and Ms. Stephen immediately complied with her instructions, calling Ziggy to come over, and readying to put the leash over the dog's head. The dog responded well to Ms. Stephen, and began to trot over at slow speed to his owner out of the bushes. At no point did Ziggy bark or growl or make any sort of threatening noises or movements.

17.     Shockingly, when Ziggy was about three feet away from Ms. Stephen and ten feet away from the two police officers, as Ms. Stephen was leaning down to place the leash around the dog's neck, P.O. Husband drew his gun and fired two to three shots at Ziggy, hitting him on the side, and causing him to slump over on the ground in front of his owner.

18.     At the moment of the shooting, Ziggy was positioned very close to his owner. In fact, by the time he slumped over, wounded and bleeding, Ziggy was inside the leash that Ms. Stephen had been attempting to place on him.

19.     Ms. Stephen was so close to Ziggy at the moment of the shooting that she clearly saw the flash of Officer Husband's gun and the smoke coming from the flesh of the dog where

the bullets pierced his body, some three feet away from Ms. Stephen. Ms. Stephen was also splattered with Ziggy's blood as a direct result of the shooting.

20. No warning of any kind – verbal or physical – was given to Ms. Stephen, either by P.O. Husband or P.O. John. Nothing was said by the two police officers in the seconds preceding the shooting. P.O. Husband maintained a cool, unperturbed demeanor throughout.

21. Ms. Stephen was left shocked and surprised – both by the shooting of her beloved dog and by the fact that she was nearly shot herself. Indeed, at the moment of the shooting, Ms. Stephen was leaning down to the ground, and was level with Ziggy, who was only three feet away. Because of her leaning position, Ms. Stephen's vital areas were also three feet away from the bullets that killed Ziggy.

22. After the shooting, P.O. Husband did not dispute that he had shot Ms. Stephen's dog, and merely claimed that Ziggy "was rushing" him. That claim is a fabrication. Ziggy presented no danger to P.O. Husband – or anyone else – at the time of the shooting. Just before he was killed, as was clearly visible to all concerned, Ziggy was trotting over – not running – toward his owner and was facing Ms. Stephen, and not the police officers, who were to the side of him, some ten feet away. Photos of the wounded dog taken at a veterinarian office indicate bullet wounds located on Ziggy's side, in the area of his shoulder and back, not on his fore chest or face, as one would expect of a dog shot while rushing the shooter.

23. A substantial number of police officers responded to the report of the shooting and gathered in the Park shortly after the shooting. However, for about one and a half hours after the incident, the NYPD officers rendered no help to Ziggy or to the devastated Ms. Stephen, who asked for help to no avail, and was reduced to applying snow to Ziggy's wounds.

24. Finally, after about 90 minutes, with Ziggy's condition critical, Plaintiff helped

5

carry Ziggy to the police van, which then drove the dog to the emergency veterinarian's office. There, Ziggy died a little over an hour after arrival, and approximately three hours after being shot without provocation.

25. Ms. Stephen has been left emotionally devastated by the shooting, as Ziggy was her primary companion, the one who greeted her when she returned home from work. Further, Ms. Stephen has suffered emotional distress as a result of the shock of having nearly been shot herself by P.O. Husband, as Ziggy was within her reach, no more than three feet away, at the time of the shooting.

## CAUSES OF ACTION

### COUNT I

**Deprivation of Rights Under the Fourth and Fourteenth Amendments and 42 U.S.C. §1983**
**(Against P.O. Husband)**

26. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

27. At the time of his shooting by P.O. Husband, Ziggy presented no danger to P.O. Husband, P.O. John, or any other person. Ziggy was not exhibiting aggressive or threatening behaviors. Rather, he was trotting over to his owner, was readying to get leashed by her, and had his side facing P.O. Husband. From the perspective of an objective, reasonable police officer, and considering the totality of the circumstances, P.O. Husband acted unreasonably in shooting and killing Ziggy.

28. Defendant P.O. Husband, acting under color of state law, violated Plaintiff's Fourth Amendment right (made applicable to the states through the Fourteenth Amendment) against unreasonable search and seizure, in that he unreasonably interfered with Plaintiff's

possessory interest in her dog, Ziggy, by shooting and killing him without provocation.

29. As a result of P.O. Husband's actions Plaintiff suffered damages in an amount to be determined at trial.

## COUNT II

### Intentional Infliction of Emotional Distress
### (Against P.O. Husband)

30. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

31. At the time of his shooting by P.O. Husband, Ziggy presented no danger to P.O. Husband, P.O. John, or any other person. Ziggy was not exhibiting aggressive or threatening behaviors. Rather, he was trotting over to his owner, was readying to get leashed by her, and had his side facing P.O. Husband. From the perspective of an objective, reasonable police officer, and considering the totality of the circumstances, P.O. Husband acted unreasonably in shooting and killing Ziggy.

32. P.O. Husband's shooting and killing of Ziggy in these circumstances, with his owner just feet away, was extreme and outrageous. P.O. Husband's conduct was undertaken with disregard for the substantial probability of causing severe emotional distress to Plaintiff, the owner of the defenseless dog that he was shooting. As a result of the death of her dog and life companion, Plaintiff has suffered severe emotional distress.

33. Further, in shooting Ziggy, P.O. Husband exposed Plaintiff to the very real possibility of death or grievous bodily harm. This danger was particularly high, given that Plaintiff was leaning towards the ground, with her vital parts – including her head and chest – nearly level with the bullets discharged into Ziggy by P.O. Husband.

34. P.O. Husband's conduct was undertaken with disregard for the substantial

7

probability of causing severe emotional distress to Plaintiff. As a result of her exposure to the possibility of extreme harm – a near-death experience – Plaintiff has suffered severe emotional distress.

35. As a result of P.O. Husband's actions, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT III

### Negligent Infliction of Emotional Distress
### (Against P.O. Husband)

36. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

37. P.O. Husband owed a duty to refrain from an unprovoked or unjustified killing of Plaintiff's dog.

38. At the time of his shooting by P.O. Husband, Ziggy presented no danger to P.O. Husband, P.O. John, or any other person. Ziggy was not exhibiting aggressive or threatening behaviors. Rather, he was trotting over to his owner, was readying to get leashed by her, and had his side facing P.O. Husband. From the perspective of an objective, reasonable police officer, and considering the totality of the circumstances, P.O. Husband acted unreasonably in shooting and killing Ziggy.

39. P.O. Husband's shooting and killing of Ziggy in these circumstances, with his owner just feet away, was extreme and outrageous. P.O. Husband's conduct was undertaken with disregard for the substantial probability of causing severe emotional distress to Plaintiff, the owner of the defenseless dog that he was shooting. As a result of the death of her dog and life companion, Plaintiff has suffered severe emotional distress.

40. Further, P.O. Husband owed a duty to Plaintiff to refrain from endangering

8

Plaintiff's physical safety, and/or to refrain from causing Plaintiff to fear for her own physical safety.

41. In shooting Ziggy, P.O. Husband breached that duty. That is, P.O. Husband exposed Plaintiff, whose vital areas were located within inches of the bullets discharged by P.O. Husband, to the very real possibility of death or grievous bodily harm. This danger was particularly high, given that Plaintiff was leaning toward the ground, with her vital parts – including her head and chest – nearly level with the bullets discharged into Ziggy by P.O. Husband.

42. P.O. Husband's conduct was undertaken with disregard for the substantial probability of causing severe emotional distress to Plaintiff. As a result of P.O. Husband's breach of the duty of care, Plaintiff was exposed to the possibility of extreme harm or death by shooting and endured a near-death experience. As a result of P.O. Husband's breach of the duty to refrain from endangering Plaintiff's physical safety, and/or to refrain from causing Plaintiff to fear for her own physical safety, Plaintiff has suffered severe emotional distress and has been damaged in an amount to be determined at trial.

## COUNT IV

### Assault
### (Against P.O. Husband)

43. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

44. At the time of his shooting by P.O. Husband, Ziggy presented no danger to P.O. Husband, P.O. John, or any other person. Ziggy was not exhibiting aggressive or threatening behaviors. Rather, he was trotting over to his owner, was readying to get leashed by her, and had his side facing P.O. Husband. From the perspective of an objective, reasonable police officer,

9

and considering the totality of the circumstances, P.O. Husband acted unreasonably in shooting and killing Ziggy.

45. Further, P.O. Husband, acting under color of state law, shot Ziggy, a defenseless animal that presented no danger to him or anyone else, even though P.O. Husband was aware that Plaintiff, his owner, was leaning down some three feet away from the dog. By discharging his gun in such circumstances, P.O. Husband, without any justification, placed Plaintiff in reasonable fear of imminent harmful or offensive bodily contact.

46. As a result of P.O. Husband's conduct, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT V

### Deprivation of Rights Under the Fourth and Fourteenth Amendments and 42 U.S.C. §1983
### (Against the City of New York)

47. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

48. The City of New York directly caused the constitutional violations suffered by Plaintiff, and is liable for damages suffered by Plaintiff as a result of the conduct of P.O. Husband.

49. The City of New York caused Plaintiff to be subjected to Fourth and Fourteenth Amendment violations because P.O. Husband's actions resulted from the City of New York's failure to properly train its employees in the standards for discharging a firearm at an animal.

50. Further, that numerous NYPD officers could negligently fail to render aid for 90 minutes to a dog that had been shot by a fellow member of the NYPD establishes the City of New York's failure to properly train its employees in rendering aid to animals wounded as a result of police action.

51. The failure of the City of New York to adequately train its police force resulted in the wrongful actions of P.O. Husband, and the wrongful death of Plaintiff's dog, in violation of her Fourth and Fourteenth Amendment rights.

52. As a result of the actions of the City of New York, Plaintiff suffered damages in an amount to be determined at trial.

### COUNT VI

### *Respondeat Superior*
### (Against the City of New York)

53. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

54. The City of New York is liable for the damages suffered by Plaintiff as a result of the conduct of its agents, servants, and employees, under the doctrine of *respondeat superior*.

55. Defendant P.O. Husband was acting within the scope of his employment as an NYPD officer at all relevant times on March 19, 2017, before, during, and after the shooting of Plaintiff's dog Ziggy.

56. At all relevant times, Defendant P.O. Husband was acting under color of state law.

57. As a result of the actions of Defendant P.O. Husband, Plaintiff suffered emotional injury, financial loss, the loss of the present and future value of her property, as well as other damages in an amount to be determined at trial.

**WHEREFORE**, it is respectfully requested that the Court award:

(a) Compensatory damages in favor of Plaintiff in an amount to be determined at trial;

(b) Punitive damages in favor of Plaintiff in an amount to be determined at trial;

11

(c) Costs, interest, and attorney's fees;

(d) An order requiring the NYPD to establish a training program to teach compliance with the Fourth and Fourteenth Amendments in relation to the treatment of dogs, and animals in general; and

(e) Such other and further relief as this Court may deem just and proper.

DATED:  March 30, 2018
          New York, New York

                                      LAW OFFICE OF ALEXANDER SAKIN, LLC

                                      Alexander Sakin
                                      433 Broadway, Suite 427
                                      New York, NY 10013
                                      (646) 790-3108

                                      *Attorney for Plaintiff*